UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

J.P. MORGAN SECURITIES LLC,                                                        Plaintiff

v.                                                            Civil Action No. 3:22-cv-137-RGJ

DUSTIN LUCKETT,                                                                  Defendant

* * * * *

**MEMORANDUM OPINION & ORDER**

Plaintiff, J.P. Morgan Securities LLC ("JPMS") moved to vacate arbitration award, to stay any proceedings to enforce arbitration award, and requested oral argument. [DE 1; DE 16]. Defendant, Dustin Luckett ("Luckett"), responded [DE 9; DE 21] and JPMS replied [DE 27]. Luckett also moved to confirm the arbitration award. [DE 29]. JPMS responded [DE 30]. These matters are ripe.

The Court exercises diversity jurisdiction in this case. JPMS is a Delaware Limited Liability Company. [DE 1-1 at 3]. Its sole member is J.P. Morgan Broker-Dealer Holdings Inc., a Delaware corporation with its principal place of business in New York, New York. [*Id.*]. Luckett is a citizen of Kentucky. [*Id.*]. The amount in controversy exceeds $75,000, because Luckett was awarded $1.4 million. [DE 1-2 at 9]. Venue is proper in the Western District of Kentucky because the arbitration took place in Louisville, Kentucky and the Federal Arbitration Act requires parties to file a motion to vacate in the "district court wherein the award was made." 9 U.S.C. § 10(a).

For the reasons below, Plaintiff's Motion to Vacate Arbitration Award [DE 1] is **DENIED** and Defendant's Motion to Confirm Arbitration Award [DE 29] is **GRANTED**.

## I.    BACKGROUND[1]

Defendant Luckett worked as a Private Client Advisor at a J.P. Morgan Chase Bank, N.A. ("Chase") branch in Louisville, Kentucky.  [DE 16 at 126].  JPMS and Chase are affiliates.  [DE 16 at 126].  JPMS is a member of the Financial Industry Regulatory Authority ("FINRA").  Luckett was employed by Chase, but his securities licenses were held by JPMS.  [*Id*. at 128].

On June 19, 2017, Chase terminated Luckett's employment.  [*Id*. at 132].  Upon termination of an employee, FINRA requires firms to file a Uniform Termination Notice for Securities Industry Regulation, known as a Form U5.  [*Id*. at 127].  JPMS filed Luckett's Form U5 as required.  [DE 9-2].  Under the "Termination Explanation" section, JPMS stated Luckett was terminated for:

> Non-securities related.  [Luckett] was terminated for having a customer sign a document and then, on the next day, asking a co-worker whether he could notarize the document without customer present; the co-worker then notarized the document for [Luckett] in violation of firm policy.  In addition, after the allegations were made regarding the notarization issue, firm concluded [Luckett] engaged in conduct it deemed inconsistent with its anti-retaliation policies.

[DE 16-5 at 297-98].  JPMS marked "Yes" for question 7F.1 of the Form U5, stating Luckett was terminated for "violating investment-related statutes, regulations, rules, or industry standards of conduct."  [*Id*. at 300].

Luckett filed a Statement of Claim asserting multiple claims against JPMS in the FINRA Dispute Resolution arbitration forum.  [DE 9-1].  He asserted that the statements on his form U5 were defamatory, put him in a false light, and interfered with his prospective business expectancies.  [*Id*. at 69-71].  He also asserted that JPMS breached an implied covenant of good

---

[1] The Court recognizes that the parties dispute one another's characterization of the facts that gave rise to Luckett's termination.  Additionally, the Arbitration Panel ("Panel") did not issue any findings of fact with its award.  Many of the contested characterizations are not relevant given the standard of review for arbitration awards.  As a result, the Background includes only those facts agreed upon by the parties.

faith and fair dealing by not facilitating his right to rollover funds in his 401(k) account. [*Id*. at 73-76].

The parties engaged in a four-day in-person arbitration in Louisville, Kentucky in January 2022. [DE 1-2 ("Award")]. The Arbitration Panel ("Panel") rendered the Award on February 4, 2022. [*Id*.]. The Award found JPMS liable to Luckett for $1.4 million in compensatory damages. [*Id*.]. The Award also "recommend[ed] the expungement of the Termination Explanation in Section 3 of [Luckett's] Form U5" and that "any 'Yes' answers should be changed to 'No,' as applicable." [*Id*.]. The Award provided that "the Termination Explanation shall be replaced with the following language: 'Non-investment related. After a dispute about clerical process, [Luckett] became disillusioned with the company's atmosphere requiring separation of his at-will employment.'" [*Id*.]. The Award specified that the Panel recommended expungement "based on the defamatory nature of the information" contained in the Form U5. [*Id*.]. Because neither party requested an explained decision, the Panel did not offer explanation of its decision or indicate on which claims the Award was based.

On March 7, 2022, JPMS filed this action requesting that the Court vacate the Award under 9 U.S.C. §§ 6 and 10 and Fed. R. Civ. P. 7(b). [DE 1; DE 16; DE 27]. Luckett opposed the Motion to Vacate and moved to confirm the Award. [DE 9; DE 21; DE 29].

## II.    ANALYSIS

JPMS moves to vacate the Award on grounds that the arbitrators exceeded their powers and manifestly disregarded the law. [DE 1]. Luckett contends that JPMS has failed to satisfy the Sixth Circuit standard for vacating arbitration awards and moves to confirm. [DE 29].

### 1.  Motion to Vacate Arbitration Award Standard

3

The Federal Arbitration Act ("FAA") expresses a federal policy in favor of enforcing arbitration awards. *See Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 600 (6th Cir. 2016) (citing *Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 613 (6th Cir. 2003)). "It is well established that courts should play only a limited role in reviewing the decisions of arbitrators." *Shelby Cnty. Health Care Corp. v. A.F.S.C.M.E., Local 1733*, 967 F.2d 1091, 1094 (6th Cir. 1992). "When courts are called on to review an arbitrator's decision, the review is very narrow; it is one of the narrowest standards of judicial review in all of American jurisprudence." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005) (citation omitted). "Courts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). Courts should proceed with particular caution when, as here, they are asked to reevaluate the factual basis of an award. *See Wachovia Sec., Inc. v. Gangale*, 125 F. App'x 671, 677 (6th Cir. 2005) ("neither the trial court nor this Court may reconsider the merits of an award, even when parties allege that the award rests on errors of fact") (quoting *United Paperworkers*, 484 U.S. at 36).

The FAA sets out only four situations in which an arbitration award may be vacated:

(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4). *See also Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008) (holding § 10 lists the "exclusive grounds" under the FAA to vacate an arbitration award). The

Sixth Circuit recognizes an additional ground for vacating an award where the arbitrators "manifestly disregarded the law." *Samaan*, 835 F.3d at 600 (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995)).[2]

Moreover, where an arbitration panel declines "to explain their resolution of certain questions of law, a party seeking to have the award set aside faces a tremendous obstacle." *Jaros*, 70 F.3d at 421. "If a court can find any line of argument that is legally plausible and supports the award then it must be confirmed." *Id*. In other words, vacatur is proper only "where no judge or group of judges could conceivably come to the same determination." *Id*.

### 2. Manifest Disregard of the Law

JPMS argues that the Award should be vacated because it was issued in manifest disregard of the law. [DE 16 at 136-51]. JPMS asserts four reasons why vacatur is warranted on these grounds: (1) Luckett failed to prove the elements of a tortious interference claim. [*Id*. at 149-51]; (2) New York law, which JPMS argues should have applied to Luckett's claims, provides absolute privilege for statements on a Form U5 [*Id*. at 136-39]; (3) Luckett failed to "prove that JPMS published a false statement," which is a required element of a defamation claim [*Id*. at 139]; and (4) false light is not a recognized claim under New York law [*Id*. at 138].

"To constitute a manifest disregard for the law, '[a] mere error in interpretation or application of the law is insufficient. Rather, the decision must fly in the face of clearly established legal precedent.'" *Coffee Beanery, Ltd. v. WW, L.L.C.*, 300 F. App'x 415, 418 (6th Cir. 2008)

---

[2] The Court assumes for this Order that "manifest disregard of the law" has survived *Hall Street* as a valid basis for vacatur. As Luckett points out in their Response [DE 9], this remains an "open question" among lower courts. *Samaan*, 835 F.3d at 600; *see also Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp*., 559 U.S. 662, 672 n.3 (2010) (declining to decide whether the manifest disregard standard of review survived *Hall Street* either "as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10"); *Humana Health Plan, Inc. v. Rite Aid Hdqtrs. Corp.*, 2023 WL 5002875, at *6 (W.D. Ky. Aug. 4, 2023) ("[T]he Sixth Circuit continues to recognize that an arbitration award may also be vacated where the arbitrator shows a "manifest disregard of the law.") (citation omitted).

(alteration in original) (quoting *Jaros*, 70 F.3d at 421). "When faced with questions of law, an arbitration panel does not act in manifest disregard of the law unless (1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle." *Jaros*, 70 F.3d at 421.

This standard is particularly difficult to meet when arbitrators decline to explain the basis for their award. Generally, arbitrators are not required to explain their decisions. *See United Steelworkers v. Enter. Wheel & Car Co.*, 363 U.S. 593, 598 (1960) ("Arbitrators have no obligation to the court to give their reasons for an award"). When an award is unexplained,

> a party seeking to have the award set aside faces a tremendous obstacle. If a court can find any line of argument that is legally plausible and supports the award then it *must* be confirmed. Only where no judge or group of judges could conceivably come to the same determination as the arbitrator must the award be set aside.

*Jaros*, 70 F.3d at 421 (emphasis added). Establishing manifest disregard based on an unexplained decision has been described as "all but impossible." *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000); *see also Federated Dep't Stores, Inc. v. J.V.B. Indus., Inc.*, 894 F.2d 862, 871 (6th Cir. 1990) (Martin, J., concurring) (describing courts' review of unexplained arbitral decisions as "something of a judicial snipe hunt with counsel for the parties arguing about [legal] analysis that may or may not have been manifestly disregarded by the arbitrator"). If there is any conceivable basis on which the arbitrators could have based their award, the reviewing court should decline vacatur. *See Solvay Pharms., Inc. v. Duramed Pharms., Inc.*, 442 F.3d 471, 483–485 (6th Cir. 2006) (declining to vacate an arbitration panel's unexplained decision because plaintiff identified two plausible theories for the decision).

The Award lacks any explanation as to the factual or legal basis for the Panel's decision. Yet this is "precisely the outcome contracted for between the parties." *Questar Cap. Corp. v. Gorter*, 909 F.Supp.2d 789, 821–22 (W.D. Ky. 2012). The parties agreed FINRA rules would

govern the arbitration. [DE 16-6 at 320]. FINRA rules provide that parties may request an explained decision. *See* FINRA Rule 13904 (g). Neither party did so in this case. [DE 9 at 46 n.4].

Thus, the Court has before it an unexplained award, four independent possible legal theories, the parties' briefings, and relevant portions of the arbitration record. JPMS asks the Court to review the merits of the Award based on the record, eliminating every possible line of reasoning that could support the Panel's award on each of the Luckett's four legal theories. Yet if any one of the theories could plausibly support the Award, the Court is bound to confirm it. *See Jaros*, 70 F.3d at 421 ("If a court can find any line of argument that is legally plausible and supports the award then it must be confirmed."). If a movant presents multiple possible grounds for vacatur, a reviewing court need address only one legally plausible basis for the arbitrators' award. *See Visconsi v. Lehman Bros., Inc.*, 244 F. App'x 708, 714 (6th Cir. 2007).

The Court turns first to Luckett's tortious interference claim. Under New York law,[3] tortious interference requires a party to prove: "(1) the existence of a business relation with a third party; (2) that the defendant, having knowledge of such relationship, intentionally interfered with it; (3) that the defendant either acted with the sole purpose of harming the plaintiff or by means that were dishonest, unfair, or improper; and (4) a resulting injury to the plaintiff's business relationship." *Empire One Telecommunications, Inc. v. Verizon New York, Inc.*, 888 N.Y.S.2d 714, 728-29 (N.Y. Sup. Ct. 2009). The "tort of interference with business relations applies to those

---

[3] It is JPMS's position that the Panel should have applied New York law to all of Luckett's claims. [DE 16 at 11-13]. Luckett argues that the Panel was properly tasked with determining which state's law to apply, and that a decision to apply either state's law does not rise to the level of manifest disregard of the law. [DE 21 at 15-27]. The Court declines to speculate about which law was applied by the Panel. The Court applies New York law for the purposes of this analysis only. If, under New York law, the tortious interference claim could plausibly support the Award, then the Court must confirm it. *Jaros*, 70 F.3d at 421.

situations where the third party would have entered into or extended a contractual relationship with plaintiff but for the intentional and wrongful acts of the defendant." *WFB Telecommunications, Inc. v. NYNEX Corp.*, 590 N.Y.S.2d 460, 461 (N.Y App. Div. 1992). To establish the second prong a plaintiff must show some activities directed "'towards the third party and convinc[ing] the third party not to enter into a business relationship with the plaintiff.'" *Zdenek Marek v. Old Navy (Apparel) Inc.*, 348 F. Supp. 2d 275, 280 (S.D.N.Y. 2004) (quoting *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477, 482 (S.D.N.Y.1997)). Further, establishing a defendant acted with dishonest, unfair, or improper means requires their conduct to have "amount[ed] to a crime or an independent tort." *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103 (N.Y. 2004).

As to the first element of a tortious interference claim, Luckett alleged that he had multiple business expectancies with other FINRA firms at the time of the publication of his Form U5 by JPMS. [DE 9-1 at 64-66]. Managers from Merrill Lynch and Raymond James testified during the arbitral proceedings about their firms' recruitment of Luckett. [DE 21-4 at 602-23]. Arthur Rozema ("Rozema"), a former Administration Manager at Merrill Lynch, testified that the firm was actively recruiting Luckett. [*Id*. at 608-18]. Tom Hirsch ("Hirsch"), a Complex Manager for Raymond James, similarly testified that Raymond James was in the process of interviewing Luckett and would have likely extended him an offer but for his firing. [*Id*. at 604-05]. This testimony establishes a plausible basis from which the Panel could conclude that Luckett had a business relationship with these potential employers.

As to the second element, Luckett did not show that JPMS had direct knowledge of his specific job prospects at Merrill Lynch and Raymond James. Yet it would be foreseeable and expected that future employers will review an applicant's FINRA profile. Rozema testified it was "protocol" to review the language on the Form U5 for "the firm to make a decision . . . [about]

mov[ing] forward." [ DE 21-4 at 617].  JPMS was likely to know of this practice as a member of

the same industry and would have expected Luckett's potential employers to conduct this kind of

review.  This establishes a plausible basis from which the Panel could conclude that JPMS knew

of the prospective employers and the effect which the Form U5 would have on Luckett's hiring

prospects.  The Court notes that this element may be less supported in the record than the others.

However, it is not a situation "where no judge or group of judges could conceivably come to the

same determination." *Jaros*, 70 F.3d at 421; *see also Wachovia Sec., Inc. v. Gangale*, 125 F. App'x

at 677 ("neither the trial court nor this Court may reconsider the merits of an award, even when

parties allege that the award rests on errors of fact") (quoting *United Paperworkers Int'l Union,*

*AFL-CIO*, 484 U.S. at 36).  There is thus a plausible basis from which the Panel could have found

this element satisfied.

As to the third element of the tortious interference claim, JPMS alleges that Luckett failed

to establish that JPMS acted with either the sole purpose of harming him or by means that were

dishonest, unfair, or improper.  [DE 16 at 150].  This element may be satisfied by a showing that

the defendant's actions amounted to an independent tort.  *See Carvel Corp.*, 818 N.E.2d at 1103.

In this case, Luckett simultaneously alleged defamation and false light, both of which are

independent torts.  In fact, the Award explicitly finds that the statements in the Form U5 were of

a "defamatory nature."  [DE 1-2 at 10].  Therefore, plausible grounds exist for the Panel to have

found that Luckett satisfied each element of the tortious interference claim.

Even if the Panel did not properly find that JPMS's conduct was independently tortious, it

would not constitute a manifest disregard for the law.  *See Jaros*, 70 F.3d at 421 ("A mere error in

interpretation or application of the law is insufficient . . . Rather, the decision must fly in the face

of clearly established legal precedent.").  JPMS has failed to establish the Panel's decision

necessarily "flies in the face" of New York law if it was based on Luckett's tortious interference claim. *Id.* After reviewing the record and transcripts, the Court concludes this case is not one "where no judge or group of judges could conceivably come to the same determination as the arbitrator." *Id.*

The fourth and final element of a tortious interference claim is an injury to the plaintiff's business relationship. Rozema testified that Merill Lynch had scheduled a start date for Luckett, but that the firm ultimately could not approve his hiring after the publication of his Form U5. [DE 21-4 at 608-18]. Hirsch similarly testified that but for Luckett's termination, Raymond James would have likely extended him an offer. [*Id.* at 604-05]. Luckett testified that JPMS's actions led him and his family to sell their home and cars and seek less expensive childcare. [*Id.* at 574]. He also testified that his current position pays substantially less than what he made while at Chase. [*Id.*; DE 21 at 459]. This is sufficient grounds on which the Panel could have found the final element of the tortious interference claim satisfied.

The tortious interference claim resolves this case because it could have properly formed the basis for the Panel's decision. The Court need not address other possible grounds for the Award. *See Visconsi*, 244 F. App'x at 714 ("[The Court] need not address each of [movant's] individual arguments so long as we identify one legally plausible basis for the arbitrators' award."). Nevertheless, the Court has reviewed the defamation and false light claims and has concluded that one or both claims could have formed an additional valid basis for the award under New York or Kentucky law.

### 3. Exceeded Powers

JPMS argues the Award should be vacated because the Panel exceeded their powers if the Award was based, in whole or in part, on Luckett's claim for breach of the implied covenant of

good faith and fair dealing.  [DE 16 at 151].  JPMS asserts that the claim is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") because it involves Luckett's right to rollover funds in his 401(k) account.

JPMS points to nothing in the Award that suggests it was based on Luckett's 401(k) claim. As established above in Part II.2, other valid grounds exist on which the Panel could have based their decision.  As a result, the Court declines to further review the merits of an award on the claim for breach of the implied covenant of good faith and fair dealing.  *See Visconsi*, 244 F. App'x at 714 ("[The Court] need not address each of [movant's] individual arguments so long as we identify one legally plausible basis for the arbitrators' award.").

### 4. Motion to Confirm Arbitration Award Standard

Section 9 of the FAA states that when faced with a motion to confirm an arbitration award "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."  9 U.S.C. § 9.  The Sixth Circuit has held that "the plain language of the Federal Arbitration Act presumes that arbitration awards will be confirmed, and [the Court's] limited role in confirming an arbitration award under the Federal Arbitration Act is well settled." *Wachovia Sec., Inc. v. Gangale*, 125 F. App'x at 676.  JPMS has failed to establish any grounds on which to vacate the Award, and therefore the plain language of the FAA compels the Court to grant Luckett's Motion to Confirm.

## III.    CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1.    Plaintiff's Motion to Vacate Arbitration Award [DE 1] is **DENIED**; and

2.    Defendant's Motion to Confirm Arbitration Award [DE 29] is **GRANTED**.

3.      The Court will enter separate judgment.


September 14, 2023

Rebecca Grady Jennings, District Judge
United States District Court


cc:      Counsel of record